## In re STONE.
### No. 3623.

District Court, D. New Hampshire.
Sept. 24, 1931.

Ovid J. Coulombe, of Berlin, N. H., for bankrupt.

Henry A. Dodge, of Littleton, N. H., and George W. Pike, of Lisbon, N. H., for objecting creditors.

MORRIS, District Judge.

Hearing on specifications in opposition to the discharge of Everett Elton Stone, bankrupt, filed by various creditors.

Stone was adjudged a bankrupt on his voluntary petition November 11, 1930. His petition for a discharge was filed April 10, 1931.

Hearing on the petition for discharge was set for May 31, 1931. Prior to hearing, various creditors filed objections and on June 1, 1931, specifications of objections were filed on behalf of John B. Eames, C. D. Ellingwood, and Eugene P. Cray.

The contest over the bankrupt's discharge includes eight specific objections as follows:

Objection No. 1 charges that the bankrupt on the 11th day of November, 1930, and continuously thereafter, knowingly and fraudulently concealed property belonging to his estate, to wit, one Ford roadster of the value of $200.

Objection No. 2 charges the bankrupt with knowingly and fraudulently making a false oath in omitting from his schedule of assets the Ford roadster.

Objection No. 3 charges the bankrupt with having knowingly and fraudulently omitted from his schedule of assets the statement that his wife, Edith Stone, held title to the Ford roadster.

Objection No. 4 charges the bankrupt with making a false oath before the referee in bankruptcy with respect to having received $118 from one Vachon at the time when a certain mortgage for $775 was executed.

Objection No. 5 charges the bankrupt with refusing to obey an order of the referee to turn over to the trustee the Ford roadster and the sum of $150, received from the town of Bethlehem.

Objection No. 6 charges the bankrupt with concealing the sum of $400, due him from Sala, Basseti & Sala.

Objection No. 7 charges the bankrupt with making a false oath in that he testified that he had not paid anything of any amount unless it appeared on his check book, whereas in fact he had received about $15,000, five thousand of which does not appear to have been expended through the medium of his checking account.

Objection No. 8 charges him with making a false oath relative to money paid to his attorney.

Hearing upon the objections was had before the court at Littleton August 18, 1931.

The evidence shows and I find that the bankrupt during the summer of 1930 conducted a place near Bethlehem Junction, N. H., known as Everett's Place, and that in connection with the same he operated a gasoline stand. This place was attended by his wife, Edith M. Stone. Mr. Stone also had several trucks and was employed by different contracting concerns, including the town of Bethlehem, the Aborial Construction Company, and Sala, Basseti & Sala. These concerns were engaged in road building, and the trucks were used in connection therewith.

Objections 1, 2, and 3, and a portion of objection No. 5, relate to the Ford roadster.

I find with reference thereto that the Ford roadster was purchased September 26, 1929, with the defendant's money. He testified that the day it was purchased or soon thereafter he gave it to his wife as a present. I find, however, that for the remainder of 1929, it was registered in the bankrupt's name and of course he took oath that at that time he owned the automobile. I further find that on January 1, 1930, it was registered in his wife's name, who of course then took oath that she was the owner of it. This was more

than four months prior to the adjudication. The automobile was intentionally omitted from the bankrupt's schedule of assets through the advice of his counsel at the time the schedules were being made.

Section 14b of the Bankruptcy Act (11 USCA § 32(b) provides, that the application of a bankrupt for discharge shall be heard, with such proofs and pleas as may be made in opposition thereto by parties in interest, and that the applicant shall be discharged, unless he has (1) committed an offense punishable by imprisonment, as herein provided, and this provision is found in section 29b (11 USCA § 52(b), as follows: "A person shall be punished, by imprisonment * * * upon conviction of the offense of having knowingly and fraudulently (1) concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy; or (2) made a false oath or account in, or in relation to, any proceeding in bankruptcy."

There was no concealment of the fact that the bankrupt and his wife had an automobile. The contention was as to ownership. Counsel in filling out bankrupt's schedule of assets omitted the automobile because he was informed that bankrupt's wife was the owner of it. He advised that it was not necessary to include it in the schedules, and bankrupt acted upon his advice and made oath to schedules with the automobile omitted.

To defeat a discharge, a false oath made by the bankrupt, must have been knowingly and fraudulently made. If the false oath was due to misunderstanding or mistake and was subsequently corrected, no offense was committed which would warrant the refusal of a discharge.

Upon hearing before the referee, the bankrupt was ordered to turn over the automobile to his trustee, which he did tardily under protest that his wife was the owner of it.

In view of the fact that Mrs. Stone had registered the car in her own name on January 1, 1930, nine months prior to adjudication, and the bankrupt claimed that he had given her the same, I am unable to find any secret trust.

Creditors' specifications 1, 2, and 3 and that portion of No. 5 pertaining to the Ford roadster are not sustained by the evidence. I find with respect to objection No. 4 that some time prior to bankruptcy the bankrupt had purchased under a conditional sales contract an electrical entertainment machine; that some time prior to filing his petition the vendor or owner of the conditional sales contract was pressing Stone for payment. He went to a friend Theodore Vachon, who advanced the money for the payment of the balance due on the machine discharging the lien thereon. Either at the time or some time prior thereto Stone wanted some money, and he borrowed $118 in money from Vachon. This was on August 21, 1930. Later Vachon took a mortgage on the machine and other property to cover the amount paid in discharge of the lien and the $118 borrowed August 21, 1930. On October 6, 1930, Stone and his wife executed a personal property mortgage covering the machine, the Ford roadster, and some other household electric utensils securing a joint and several note in the amount of $768. At the hearing before the referee at Woodsville, December 3, 1930, in answer to a question propounded by counsel for creditors, Stone testified with respect to this mortgage as follows:

"A. I gave it to him on this condition; I wanted some more money. I borrowed $118 from him and he said he had better take a mortgage, and I said it was all right with me, so he took the security.

"The Referee: If I understand your testimony correctly, at the time the mortgage was executed, you received $118, from Mr. Vachon?

"A. Yes Sir.

"The Referee: And that all the balance or the difference, the difference between the $118, and the amount of the claim, $775, if that is the correct amount, was for a debt contracted two months prior?

"A. Yes Sir."

Following this testimony the referee allowed the $118 as a secured claim which has since been paid to Vachon.

There is no doubt but that the referee was misled by this testimony. This did not appear until the subsequent hearing on May 11, 1931, after the trustee had examined Stone's check book and discovered the stub of a check for $118, dated August 21, 1930. At that hearing it developed that when Stone borrowed the $118 he gave Vachon a check for that amount with instructions to hold it, and the check was never cashed.

At the hearing before the court on the question of discharge, Stone admitted to testifying before the referee at Woodsville as hereinbefore stated, and admitted at the hearing later held at Littleton that the $118 was not paid to him by Vachon on the date when

the mortgage was executed. He further testified before the court that he did not understand the questions as propounded to him at Woodsville, and I am in doubt as to whether or not he did understand that it made any substantial difference whether or not the $118, was received on the same date the mortgage was executed. I am inclined to give the bankrupt the benefit of the doubt although the questions seem plain.

I find that he did not knowingly and fraudulently make a false oath with reference thereto before the referee for the purpose of aiding his friend Vachon and defrauding his other creditors. He was not represented by counsel at the hearing, and I do not believe he knew the difference, and I so find.

■ With reference to that portion of objection No. 5 relating to the order of the referee to turn over the sum of $150 to the trustee, I find that the transaction related to $150 earned by the bankrupt by the use of his trucks in working for the town of Bethlehem after his petition in bankruptcy had been filed. The referee ordered that such sum should be paid over by the bankrupt to his trustee. Up to the time of the hearing on the question of discharge, only $15 had been paid. Orders made by the referee should be complied with at once or appeal therefrom seasonably taken. In the instant case there was some contention made that the whole of the $150 should not be paid because of the fact that bankrupt's time and money were expended in earning the $150, and such portions of the expenses as were incurred and paid by the bankrupt in earning this sum should be deducted. This matter should have been speedily settled either by the referee or upon appeal therefrom. No bankrupt can expect to be discharged until he has complied with the orders of the referee. It may be that the contention of the bankrupt and his counsel was well taken, a matter which is not now the province of the court to determine, but, if so, it should have been determined long before this.

■ To my mind objection No. 6, which charges the concealment of the sum of $400, has more substance in it than any of the other charges.

I find that on August 18, 1926, the bankrupt gave a real estate mortgage of his homestead place in Bethlehem to one Wensley E. Smith conditioned on payment of $1,229.95. The notes were payable at the Lisbon Savings Bank & Trust Company at Lisbon, N. H. At the time of the bankruptcy proceeding, there was due or coming due on October 18, 1930, the sum of $505, on these notes. Joseph T. Williamson, the bankrupt's father-in-law, had indorsed the notes. On or about October 2, 1930, an action was brought against the bankrupt to recover a considerable sum of money and the firm of Sala, Basseti & Sala was summoned as trustee. There was held in the hands of the trustee the sum of $400. Stone on October 5th or 6th, 1930, gave his father-in-law an order on Sala, Basseti & Sala for that sum which Williamson collected. The mortgage deed was discharged by Wensley E. Smith, October 27, 1930, showing that payment had been made of the $505, upon that date or prior thereto. At the hearing before the Referee on December 3, 1931, Williamson presented the note for allowance without any indorsement thereon, although the order for $400 was given to be applied in payment. When questioned by the referee, the bankrupt admitted his signature and testified as follows:

"Q. Is that your signature on those papers? A. Yes Sir.

"Q. And any part of those notes been paid? A. No."

This is too serious a matter to be overlooked. The bankrupt when he testified knew that he had given an order for $400 to be applied on the notes, and should have so stated. He knew when the order was given that he was in financial trouble, although he may not have realized the extent until, as he testified, about October 10, 1930. He at least had reason to believe that he was insolvent when the order was given. He concealed the existence of the order and its payment and permitted his father-in-law to prove the notes without any indorsement thereon. When he answered the referee that no part of the notes had been paid he took a false oath the effect of which was a concealment of assets from the trustee and which should bar his discharge.

■ Objection No. 7 relates to the discrepancy between the amount of money earned during the season of 1930 and the amount of money paid out through the medium of his checking account in the Littleton National Bank. Larkin R. Brush of Littleton was appointed trustee and obtained from the bank the amount of deposits and withdrawals as shown by the bank statement. It shows a total of $12,163.61 had been deposited and checked out, although several of the check stubs were missing. Whether or not any money remained in the bank at the time the

petition was filed is not disclosed by the evidence. Edith M. Stone, as hereinbefore stated, wife of the bankrupt, tended to the roadside stand and gasoline station. She testified that she handled the money taken in most of the time; that she had one girl employed to do the cooking at $15 per week, two girls waiting table at $7 per week each, a laundress that she paid $10 a week, and spare help taking care of her children at $4 per week. She also had a boy that helped part time on the outside that she gave $5 a week. She testified that the help was paid in cash, and that she also paid the household expenses in cash. I cannot find that there is such a substantial difference or variance between the $15,000, testified to have been earned and the money paid through the bank and cash as to make a finding that assets have been concealed.

Objection No. 8 refers to the bankrupt's testimony that he had no money on hand at the time he filed his petition although it appears that he paid $50 filing fees. These fees have to be paid in advance, and presumably took practically all the cash he had and left him nothing with which to pay his attorneys.

Objections numbered 1, 2, 3, 4, 5, 7, and 8 are not sustained.

Objection No. 6 is sustained, and an order will be made refusing bankrupt's discharge.